**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re:<br><br>VALID VALUE PROPERTIES, LLC,<br><br>Debtor. | NOT FOR PUBLICATION<br><br>Case No. 16-13299<br>Chapter 11 |
|---|---|

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO LIFT THE STAY NUNC PRO TUNC TO THE PETITION DATE, DISMISSING CASE AS BAD FAITH FILING, AND ENJOINING ADDITIONAL BANKRUPTCY PETITION FILINGS FOR <u>TWO YEARS</u>**

*A P P E A R A N C E S:*

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for TPG CW REO, L.L.C., assignee of TPG CW, L.P.*
156 West 56th Street
New York, NY 10019
By:     Leslie S. Barr, Esq.
         Mark Slama, Esq.

WILLIAM K. HARRINGTON
*United State Trustee for Region 2*
201 Varick Streeet, Room 1006
New York, NY 10014
By:     Greg M. Zipes, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

  Pending before the Court are the following motions:

  1. The *Motion of TPG CW REO, L.L.C., Assignee of TPG CW, L.P. for Order (A) Dismissing Debtors' Bankruptcy Case for Cause, Including Bad Faith,* Nunc Pro Tunc *to the Filing Date, or in the Alternative, (B) Annulling the Automatic Stay for Cause, Including Bad Faith and Lack of Adequate Protection, or (C) Granting Movant Adequate Protection* (the "TPG Motion," ECF Doc. # 4), filed by TPG CW REO LLC as assignee of TPG CW LP ("TPG") on December 14, 2016.   In support

of the TPG Motion, TPG filed the *Affidavit of Julie Melander* (the "Melander Affidavit," ECF Doc. # 4-1) and certain exhibits attached thereto.[1]

2. The *Memorandum of Law of the United States Trustee in Support of Motion for an Order to Convert this Case to Case Under Chapter 7 of the Bankruptcy Code or Dismiss this Chapter 11 Case* (the "UST Motion," ECF Doc. # 7), filed by the United States Trustee (the "UST") on December 19, 2016.

3. The *Response of TPG CW REO, L.L.C., Assignee of TPG CW L.P., in Partial Opposition to Motion of the United States Trustee for Order Converting This Chapter 11 Case to a Case Under Chapter 7, or in the Alternative, Dismissing Debtor's Chapter 11 Case for Cause* (the "TPG Response," ECF Doc. # 9), filed by TPG on December 29, 2016.

Valid Value Properties, LLC (the "Debtor") did not respond to these motions, and neither the Debtor nor Farrel Donald, counsel to the Debtor, appeared at the January 5, 2017 hearing on the TPG Motion and the UST Motion.

## I. BACKGROUND

This chapter 11 case was filed on November 21, 2016. (ECF Doc. # 1.) The petition is signed by the Debtor's president, Geoffrey Ukekweh ("Ukekweh"), and by counsel, Farrel Donald, Esq. The Debtor has yet to file any schedules or other required filings in this case, so the facts set forth below are taken from the pleadings filed by TPG and the UST.

### A. The Debtor's Business

The Debtor is the apparent owner of non-residential real property located at 701-703 East 219th St., a/k/a 3800 White Plains Road, Bronx New York (the "Property"). (TPG Mot. at 5.) As set forth in the Melander Affidavit, on May 29, 2007, Ukekweh executed and delivered to TPG a Promissory Note (the "Note") relating to a commercial loan made to him in the amount of

---

[1] Also attached to the TPG Motion are (i) an *Order Dismissing Chapter 13 Case With Prejudice* signed by Judge Garrity on September 26, 2016 (the "Second Ch. 13 Dismissal Order"), and (ii) a letter from counsel to TPG to Farrel Donald stating that "TPG has not consented to any use, sale or lease of cash collateral . . . ." (TPG Motion at Ex. 2, 3.)

2

$1,000,000.00 (the "Loan"). (Melander Affidavit at 1, Ex. A.) Ukekweh also executed and delivered to TPG a mortgage dated May 29, 2007 (the "Mortgage"), which provided security for payment of money owing to TPG under the Note. (Melander Aff. at 2, Ex. B.) As additional security for the Note and Loan, Ukekweh executed and delivered to TPG an assignment of leases and rents (the "ALR," ECF Doc. # 4-4) also dated May 29, 2007, whereby all right, title and interest in current and future leases and rents were assigned unconditionally to TPG. (Melander Aff. at 2, Ex. C.) UCC-1 Financing Statements were filed to perfect TPG's security interest in Ukekweh's pledged property. (Melander Aff. at 3, Ex. D.) The Melander Affidavit indicates that on February 7, 2008, Ukekweh transferred title to the Property to Valid Value Properties, LLC. (Melander Aff. at 3.)

TPG maintains that the Debtor and Ukekweh rent the Property to commercial tenants, and retain the rental payments in violation of the ALR in favor of TPG. TPG also states that Ukekweh defaulted on obligations under the loan documents by, among other things, "failing to make regularly scheduled payments of principal and interest . . . commencing in September 2012 and continuing thereafter unabated; (ii) failing to pay real estate taxes and municipal assessments against the Property; (iii) causing numerous liens to be placed on the Property [*e.g.* New York City Environmental Control Board Liens]; (iv) failing to timely provide requested financials to TPG, including proof of insurance; and (v) failing to pay to [TPG] all rents, issues, and profits of the Property under the terms of the ALR." (Melander Aff. at 3–4.) TPG asserts that the "Debtor and Ukekweh have not paid taxes or water and sewer charges which encumber [TPG's] collateral and prior to the November 21, 2016 sale the amount of these liens exceeded $101,374.88, plus interest and penalties." (TPG Mot. at 5.)

3

The Melander Affidavit indicates that the Debtor is indebted to TPG in the amount of $1,523,645.34 as of May 31, 2016, which amount is secured by a lien on the Property. (Melander Aff. at 7.)

### B.  The Debtor's Previous Filings and the Chapter 13 Dismissal Orders

On July 15, 2014, the Debtor's principal, Ukekweh, filed a chapter 13 case, purportedly to stay TPG's foreclosure proceedings. (TPG Motion at 2.) This chapter 13 case (the "First Ch. 13 Case") was dismissed after less than two months for, among other things, failure to remit timely plan payments, failure to timely file documents, and failure to provide the trustee with copies of federal and state tax returns. (*Id.*; *see also In re Ukekweh,* Case No. 14-12069, ECF Doc. # 14 (Bankr. S.D.N.Y. Sept. 8, 2014).) Ukekweh seems to have appeared *pro se* in the First Ch. 13 Case.

On May 5, 2016, Ukekweh again filed for chapter 13 relief (the "Second Ch. 13 Case") before Judge Garrity. *In re Ukekweh, a/k/a Geoffrey Ukekweh,* **d/b/a Valid Value Properties, LLC**, *d/b/a Geodana Realty, Corp.*, Case No. 16-11307 (Bankr. S.D.N.Y.) (JLG) (emphasis added). On September 27, 2016, Judge Garrity entered an order granting a motion to dismiss the case with prejudice, and barred Ukekweh from filing for bankruptcy under any chapter for one year. *In re Ukekweh*, Case No. 16-11307, ECF Doc. # 20 (Bankr. S.D.N.Y. Sept. 27, 2016). Dismissal was ordered in that case for the following reasons: Ukekweh's noncontingent, liquidated, secured debts exceeded the statutory limit; Ukekweh failed to file information required under Bankruptcy Code § 521; Ukekweh caused unreasonable delay that was prejudicial to creditors; Ukekweh failed to timely file a plan and remit timely plan payments; and Ukekweh failed to provide the trustee with tax returns. (*Id.*)

4

### C. The State Court Foreclosure Proceedings

On December 14, 2012, TPG filed a complaint against Ukekweh and the Debtor in the Supreme Court of the State of New York, Bronx County (the "State Court"). (Melander Aff. at 4.) Following proceedings in the State Court, TPG obtained a judgment of foreclosure and sale entered on February 25, 2016 (the "Judgment"), in the case titled *TPG CW, L.P., Plaintiff, against Geoffrey O. Ukekweh, et al., Defendants*, Index No. 35166-12 (the "Foreclosure Action"). (TPG Mot. at 4–5.) TPG states that "Ukekweh was found to be in contempt of the state court's order appointing a receiver by continuing to collect rents generated by the real Property after the State Court appointed the receiver to do so and operate the Property." (TPG Mot. at 5.) TPG maintains that Ukekweh "has never purged that contempt, nor paid the sanctions imposed upon him by the State Court." (*Id.*)

### D. The Sale

A public auction sale of the Property (the "Sale") was set to be held on November 21, 2016, at 2:00 p.m. (Melander Aff. at 6.) On the morning of November 21, 2016, the Debtor filed an order to show cause with the State Court seeking to stay the public auction, but the State Court declined to stay the Sale. (Melander Aff. at 6, Ex. K.) The Sale, which was held before TPG received notice of the Petition, produced a winning bid of $1,050,000, and the winning bidder tendered a deposit of $101,000 and executed a memorandum of sale. (Melander Aff. at 6, Ex. L.)

### E. The Petition

At 2:12 p.m. on November 21, 2016, Valid Value Properties LLC filed a petition for relief under chapter 11 of the Bankruptcy Code (the "Petition," ECF Doc. # 1). TPG asserts that "[t]he Debtor filed this chapter 11 petition within minutes of the State Court ordered foreclosure

5

sale and immediately after the State Court denied his third request for a stay." (TPG Mot. at 5.)

The Petition includes the following information:

1. The Petition is signed by Ukekweh, the Debtor's president and principal, and by attorney Farrel Donald ("Donald"), of the law offices of Farrel Donald, who signed the Petition as the Debtor's attorney. (Petition at 5.)

2. The Petition lists only two unsecured creditors: TPG CW, L.P., with an unsecured claim of $400,000 on account of "bank loans"; and Windels Marx Lane & Mittendorf (counsel to TPG), with an unsecured claim of $20,000 also on account of "bank loans." (Petition at 7.) "National City Bank" is listed on the "List of Creditors (Matrix)" but does not appear on the list of unsecured creditors. (Petition at 6.)

3. The Petition estimates the Debtor's assets at $100,000 to $500,000, with liabilities estimated at $500,000 to $1,000,000. (Petition at 3–4.)

4. The "Single Asset Real Estate" box on the Petition is not checked. (Petition at 2.)

The Debtor has not filed any schedules to date, and the deadline to do so was December 5, 2016. *See* ECF entry on November 21, 2016 ("Incomplete Filings due by 12/5/2016").

## II.   THE MOVING PARTIES' CONTENTIONS

### A. TPG's Contentions

TPG argues that the filing of the Petition is a clear violation of the Second Ch. 13 Dismissal Order, and that the Court should dismiss this case pursuant to Bankruptcy Code sections 105 and 349(a). (TPG Mot. at 7.) TPG argues further that pursuant to sections 109(g), the Debtor is ineligible for relief because "no individual [ ] may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." (TPG Mot. at 8) (quoting 11 U.S.C. § 109(g).)

Additionally, TPG argues that there is no reasonable probability that this Debtor will emerge from bankruptcy, and that there is no realistic chance of reorganizing given Ukekweh's

6

history in the Bankruptcy Court. (TPG Mot. at 9.) TPG has not been paid any amounts post-petition, and states that it holds a secured claim well in excess of $1.186 million, "while the duly noticed properly conducted public auction of the Property at foreclosure yielded $1.05 million from a bona fide third party purchase [*sic*] who has already paid a good faith deposit of $101,000 and is ready, willing and able to complete the transaction." (*Id.*)

TPG further asserts that under the Second Circuit's test for determining whether a debtor filed a case in bad faith, the factors weigh heavily in favor of dismissal. (*Id.*) (citing *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1310 (2d Cir. 1997).) TPG argues that, in addition to Ukekweh's repeat filings, "(1) the Debtor is a single asset real estate [debtor] . . . ; (2) the Debtor has listed only two unsecured creditors in the aggregate amount of $420,000.00 (one of whom is, for some unknown reason, is the attorney for TPG), a small fraction of the more than $1.1 million that it owes to TPG alone; (3) the Debtor's one asset is the subject of a foreclosure action as a result of uncured loan defaults; (4) the Debtor filed this case minutes after the State Court denied an Order to Show Cause to stay the Sale, and minutes after the sale was scheduled to begin; and (5) the Debtor has no employees." (TPG Mot. at 13.) For substantially the same reasons, TPG argues that relief from the automatic stay is warranted.

TPG is also concerned that there may not be any insurance on the Property. (*Id.* at 19.)

### B. The UST's Contentions

The UST argues that this case should be either converted to chapter 7, or dismissed. The UST indicates that the Debtor has failed to file schedules or a statement of financial affairs, and purported counsel to the Debtor has not filed a retention application. (UST Motion at 2.) Further, the UST indicates that the Debtor has failed to provide the UST with proof of insurance

7

and proof of a debtor-in-possession bank account, and has been entirely unresponsive to these requests. (*Id.*)

TPG, in the TPG Response, states its opposition to the conversion of the case to chapter 7. (TPG Response at 2.) TPG argues that because this is essentially a two-party dispute, conversion will provide no benefit to anyone.

### III.    LEGAL STANDARD

**A.  Corporate Entities Must Appear Through Counsel**

It has long been settled law that only a natural person may represent itself *pro se*; corporations and other entities must retain counsel. *Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993); *see also Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) (stating that "a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*").

As already stated, the chapter 11 petition in this case was signed by attorney Farrel Donald. But other than signing and filing the petition (without schedules), Donald has not filed any other pleadings. As discussed below, Donald has not filed an application seeking court approval for his retention under section 327 of the Bankruptcy Code and Fed. R. Bankr. P. 2014. No disclosure has been made whether Donald received any retainer.[2]

**B.  Retention of Counsel**

Any professional must receive court approval in order to employ an attorney or other professional. *In re Engel*, 124 F.3d 567, 571 (3d Cir. 1997).

Section 327(a) of the Bankruptcy Code provides that

---

[2]    In light of Donald's conduct in preparing, signing and filing the Petition, without any of the additional required filings, Donald's conduct should be the subject of inquiry by the Office of the U.S. Trustee.

8

> "[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

11 U.S.C. § 327(a).

The Second Circuit defines an adverse interest as (i) possessing or asserting "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant" or (ii) possessing "a predisposition under circumstances that render such a bias against the estate." *See Bank Brussels v. Coan (In re Arochem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999) (citation omitted).

Bankruptcy Rule 2014 regulates the application that must be filed to receive an order approving employment under sections 327, 1103, or 1114 of the Bankruptcy Code. Local Rule 2014-1 provides additional information that should be included. The application must include:

- Specific grounds for employment;
- Specific facts giving rise to the need for employment;
- Name of the party to be employed;
- Reasons for the selection of that professional;
- Professional services will be rendered;
- Compensation arrangements which have been made with the professional;
- Qualifications of person to be employed;
- Connections between the professional to be employed and the parties in interest attorneys and accountants in the case, and the UST and its personnel;
- Specific facts detailing why the terms and conditions of employment are reasonable including retainer, hourly fee, or contingent fee arrangement.

A professional whose employment is approved under section 327 enjoys no presumption that his compensation will be paid from the estate under section 330. *Id*. Donald has not filed a retention application with this Court.

9

### C. The Debtor's Obligation to Pay Post-Petition Obligations

Section 365(d)(3) provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.

11 U.S.C. § 365(d). The carve-out for section 503(b)(1) refers to certain administrative expenses. *See In re Mervyn's Holdings, LLC*, 2013 WL 85169 at *7 (Bankr. D. Del. Jan. 8, 2013). Valid Value Properties LLC, as debtor in possession, has "essentially the same rights, powers, and duties as a trustee." *Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 605 (2d Cir. 2007). The Debtor has not made any post-petition payments.

### D. Bad Faith

Bad faith may be sufficient "cause" to lift the automatic stay. *Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). The court may also dismiss a case due to a debtor's bad faith. 11 U.S.C. § 1112(b); *In re C-TC 9th Avenue P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997). "'[T]he standards for bad faith as evidence of cause,' whether in the context of dismissal or relief from the stay, 'are not substantively different from each other.'" *In re Éclair Bakery Ltd.*, 255 B.R. at 138 (citing *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y.1997)); *In re MacInnis*, 235 B.R. 255, 259 (S.D.N.Y. 1998) (stating that it is "well established that a debtor's lack of good faith in filing a petition for bankruptcy constitutes sufficient cause to lift the stay") (internal citations and quotation marks omitted). "The good faith standard applied to bankruptcy petitions furthers the balancing process between the interests of debtors and creditors which characterizes so many

10

provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." *In re Éclair Bakery Ltd.*, 255 B.R. at 137 (citing *C-TC 9th Ave. P'Ship*, 113 F.3d at 1310 (internal quotation marks and citation omitted)).

In determining whether there is bad faith sufficient to dismiss the case or lift the stay, the court must analyze "whether the [d]ebtor and its principal have played by the rules; have met their obligations under the Bankruptcy Code; and have 'done equity' when invoking the equitable protections the Bankruptcy Code provides." *Id.* The filing of a petition on the "eve of foreclosure or eviction" is not sufficient alone to constitute bad faith "cause" to lift the automatic stay, but is one of many circumstances which can be considered in a totality of the circumstances analysis. *Id.* at 137 (citing *In re 234-6 West 22nd St. Corp.*, 214 B.R. at 757).

"It is the totality of circumstances, rather than any single factor, that will determine whether good faith exists." *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997). "[A] determination of bad faith requires a full examination of all the circumstances of the case; it is a highly factual determination but also one that may sweep broadly." *C-TC 9th Ave. P'ship*, 113 F.3d at 1312. The court identified eight factors indicative of a bad faith filing:

> (1) The debtor has only one asset;
> (2) The debtor has few unsecured creditors whose claims are small in relation to those of secured creditors;
> (3) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which could be resolved in [a] pending state foreclosure action;
> (5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) The debtor has little or no cash flow;
> (7) The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

  (8) The debtor has no employees.

*Id.* at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992)); *see also In re Project Orange Assocs.*, 432 B.R. 89, 113 (Bankr. S.D.N.Y. 2010) (applying the *C-TC 9th Avenue P'ship* factors).

  The bad faith standard in the Second Circuit requires showing "both objective futility of the reorganization process and subjective bad faith in filing the petition." *In re Kingston Square Assocs.*, 214 B.R. at 725; *In re Gen Growth Props.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (following the standard articulated in *Kingston Square Assocs.*). A bankruptcy court should dismiss a case for want of a good faith filing only after proceeding with "great caution and upon supportable findings both of objective futility of any possible reorganization and the subjective bad faith of the petition" seeking bankruptcy protection. *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 848 (E.D.N.Y. 1995) (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir. 1989)).

  Once the movant has established the existence of both subjective bad faith and objective futility, "a rebuttable presumption of bad faith arises and the burden shifts to the debtor 'to establish good and sufficient reasons why the relief should not be granted.'" *Squires Motel, LLC v. Gance (In re Squires Motel, LLC)*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (quoting *In re Yukon Enters., Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)). In other words, the debtor must demonstrate the existence of "unusual circumstances" that establish that "dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1)–(2); *see also Squires Motel*, 39 B.R. at 921.

  **E. Lifting the Automatic Stay Pursuant to Bankruptcy Code § 362(d)(4)(B)**

  Bankruptcy Code § 362(d)(4)(B) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . with respect to a stay of an act against real property . . . by a creditor whose claim is secured by an interest in such real property, if the court finds the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4)(B); *see also In re Cent. Park Estates*, LLC, 485 B.R. 72, 76 (Bankr. S.D.N.Y. 2013) (stating that "a creditor may seek 'in rem' relief from the automatic stay by showing that the petition [is] part of a scheme to hinder, delay and defraud pursuant to § 362(d)(4)(B)"). "This provision, if applicable, would permit in rem relief from the stay as to [a secured creditor's] interest in [a debtor's property], 'such that any and all future filings by any person or entity with an interest in the Property will not operate as an automatic stay . . . for a period of two years after the date of the entry of such an order,' provided that the order is recorded in compliance with applicable state laws governing notices of interest or liens in real property." *In re Richmond*, 513 B.R. 34, 38 (Bankr. E.D.N.Y. 2014) (quoting *In re Montalvo*, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009)). Bankruptcy Courts may "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone," and "no evidentiary hearing [is] necessary for the Bankruptcy Court to make this determination . . . ." *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012) (quoting *In re Blair*, No. 09-76150, 2009 WL 5203738, at *4–5 (Bankr. E.D.N.Y. Dec. 21, 2009)). Relevant to this analysis is whether a debtor has "evinced no true intention to reorganize their financial affairs" and whether a debtor's previous filings were "prosecuted to any meaningful degree." *Blair*, 2009 WL 5203738, at *3.

### F. Enjoining Future Bankruptcy Filings

It has long been recognized that "[t]he general object of all bankrupt . . . laws is, on the one hand, to secure to creditors an appropriation of the property of their debtors *pro tanto* to the

13

discharge of their debts . . . ; and, on the other hand, to relieve unfortunate and honest debtors from perpetual bondage to their creditors." 2 Joseph Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1106 (2d ed. 1851). Where a debtor (or related individuals or entities) abuses the bankruptcy system, bankruptcy courts may dismiss cases, and in extreme circumstances, such as are present here, bankruptcy courts may enter anti-filing injunctions or sanctions to punish and deter further abuse.

A federal court has well-recognized authority to restrict the activity of abusive litigants. *See Abdul-Akbar v. Watson*, 901 F.2d 329, 332–33 (3d Cir. 1990); *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989); *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984). In deciding whether to issue a filing injunction, a court must determine "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).

## IV.    DISCUSSION

The factual record presently before the Court largely speaks for itself. Ukekweh has engaged in a pattern of bankruptcy filings, personally or by entities he controls, designed for only one purpose—thwarting the efforts of TPG CW, L.P. to complete foreclosure of the Property. All previous cases filed by Ukekweh in this Court have been dismissed. Ukekweh has never fulfilled the most basic obligations of an honest debtor seeking relief from a bankruptcy court. The chapter 11 petition in this case was signed and filed by an attorney who has done nothing in this case other than sign and file the petition.

Though the Second Ch. 13 Dismissal Order was entered in a case initiated by Ukekweh under chapter 13, Valid Value Properties, LLC, the debtor in this case, is expressly listed as a "d/b/a" entity on the Second Ch. 13 Case caption. Judge Garrity's dismissal order arguably prohibits the filing of the petition in this case, but Bankruptcy Code section 109(g) also provides

that "no individual [ ] may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." 11 U.S.C. § 109(g). Thus, at the outset, the filing of the Petition itself may have been a sanctionable offense. It is unnecessary to resolve that issue, however, because the filing of the petition in this case was a bad faith filing.

Moreover, the Debtor's attorney has not filed a retention application, and the Debtor has failed to file any schedules or statements of financial affairs. These items alone are also unacceptable. *See* Fed. R. Bankr. P. 1007(c) ("In a voluntary case, the schedules, statements, and other documents required . . . shall be filed with the petition or within 14 days thereafter.") Compounding these offenses is the Debtor's refusal to cooperate with the UST on critical matters, like confirming the Property is insured.

With respect to TPG's arguments that this case was filed in bad faith, the Second Circuit's bad faith factors weigh heavily in favor of dismissal or lifting the automatic stay. With respect to each of the *C-TC* factors:

    (1)    The Debtor appears to have only one asset, the Property;

    (2)    The Debtor lists two unsecured creditors on the Petition, but they are TPG and TPG's attorney, and the supposedly unsecured claims are small in relation to TPG's secured claim;

    (3)    The Debtor's one asset is the subject of a foreclosure action as a result of a default on the debt (and the foreclosure action has already resulted in a sale);

    (4)    The Debtor's financial condition is a two-party dispute between the Debtor and TPG which could be resolved by completing the foreclosure sale;

    (5)    The timing of the Debtor's filing plainly evidences an intent to delay or frustrate the legitimate efforts of TPG to enforce their rights;

    (6)    The Debtor appears to have little or no cash flow based on the refusal to pay taxes and remain current on obligations owed to its secured creditor;

    (7)    The Debtor has not paid necessary expenses including taxes; and

>    (8)    The Debtor has no employees.

*C-TC 9th Ave. P'ship*, 113 F.3d at 1312.

Additionally, it is unclear whether the Debtor has maintained insurance on the Property. This Debtor has demonstrated a propensity for suspect conduct given the failure to abide by State Court (and arguably Bankruptcy Court) orders, the refusal to pay taxes and provide proof of insurance, and the refusal to interact with parties in interest. The fact that the Debtor has declined to fulfil even the most basic obligations of a debtor, time and again, is strong evidence of the objective futility of a reorganization in this case. Similarly, the Debtor's refusal to participate in this case, as well as previous cases filed in this District, and the Debtor's refusal to file required schedules or cooperate with the UST demonstrates subjective bad faith on the part of the Debtor. Grounds to dismiss this case clearly have been shown.

Ukekweh has also plainly demonstrated a history of vexatious bankruptcy filings. Ukekweh and the Debtor have evidenced no intention whatsoever to participate in this case or any of the previous bankruptcy cases, each of which revolved around the Property. Ukekweh's pattern of misconduct has also demonstrated that unless *further* enjoined, Ukekweh will continue to abuse the judicial process. The filing of the Petition was clearly the latest effort in a scheme to hinder and delay TPG's efforts to properly enforce its rights with respect to the Property, and as such, the Court finds that there are grounds to modify the automatic stay pursuant to section 362(d)(4)(B) of the Bankruptcy Code *nunc pro tunc* to the Petition date and permit TPG to complete the Sale of the Property. Therefore, in addition to dismissing the current bankruptcy case as a bad faith filing, as part of this Opinion and Order, the Court will enter a filing injunction, providing that for a period to two years from the date of this Opinion and Order, Ukekweh, Valid Value Properties, LLC, his or its officers, agents, servants, employees, attorneys, or other persons who are in active concert or participation with them, are barred from

16

filing any further bankruptcy petitions under any chapter of the Bankruptcy Code, in the U.S. Bankruptcy Court for the Southern District of New York.

### V.    CONCLUSION

For the reasons explained above, the motion to lift the stay *nunc pro tunc* to the Petition Date is **GRANTED**. Additionally, the motion to dismiss this case as a bad faith filing is **GRANTED**. The filing of this petition was part of a scheme to delay, hinder or defraud a secured creditor—TPG CW REO, L.L.C., assignee of TPG CW, L.P.—and, therefore, if this Order is filed in compliance with applicable state law, this Order is binding in any other case under title 11 purporting to affect the Property, in accordance with section 362(d)(4)(B) of the Bankruptcy Code.

**Additionally, for a period of two years from the date of this Opinion and Order, Ukekweh, Valid Value Properties, LLC, his or its, officers, agents, servants, employees, attorneys, or other persons who are in active concert or participation with them, are restrained, enjoined and barred from filing any further bankruptcy petitions under any chapter of the Bankruptcy Code, in the U.S. Bankruptcy Court for the Southern District of New York.**

Counsel for TPG CW REO, L.L.C. shall serve a copy of this Opinion and Order on Debtor's counsel by U.S. Mail and file a certificate of service on the docket.

**IT IS SO ORDERED.**

Dated:    January 5, 2017
          New York, New York

                                  *Martin Glenn*
                                  MARTIN GLENN
                           United States Bankruptcy Judge